UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

**CASE NO.: 18-565**

GRANT FEISS, individually and on behalf
of a class of others similarly situated,

     Plaintiff,

vs.

KLEIN & KLEIN, LLC,

     Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

Defendant, KLEIN & KLEIN, LLC ("Defendant"), by counsel and pursuant to Rules 12(b)(3) and 12(b)(6) of the *Federal Rules of Civil Procedure*, hereby moves the Court to dismiss with prejudice the First Amended Class Action Complaint Seeking Injunctive Relief and Statutory Damages (the "Amended Complaint"), [Doc. 4], or alternatively, transfer venue from the Middle District of Florida's Tampa Division to the Ocala Division, as follows:

## I.    BACKGROUND AND PERTINENT ALLEGATIONS IN THE AMENDED COMPLAINT.

On or about November 6, 2018, Plaintiff GRANT FEISS ("Plaintiff") filed a one (1) count Class Action Complaint Seeking Injunctive Relief and Statutory Damages (the "Complaint"), [Doc. 1], against Defendant alleging violations of 15 U.S.C. §§ 1692(g)(a)(3) and (g)(a)(4) of the Fair Debt Collections Practices Act (the "FDCPA"). The Amended Complaint was filed on or about November 12, 2018, [Doc. 4], which also

purports to be a putative class action consisting of a single count alleging the same FDCPA violations as the Complaint.  [*See Id., generally*.]

The Amended Complaint alleges that "[o]n or about April 19, 2018, Defendant sent a collection letter to Plaintiff in an attempt to collect the Consumer Debts from Plaintiff" (the "Collection Letter").  [*Id.* at ¶ 16.]  The Collection Letter is attached to the Amended Complaint as Exhibit "A."  [Doc. 4-1.]  The "Consumer Debts" to which the Amended Complaint refers are delinquent assessments associated with Silver Lakes Acres Property Owner's Association, Inc. (the "Association").  [*See* Doc. 4-1 at p. 1.]  Defendant represents the Association in connection with various matters.  [*Id.*]  The specific amount of delinquent assessments referenced in the Collection Letter totaled $1,287.95.  [*Id.*]  On the second page of the Collection Letter is a FDCPA validation notice, which is highlighted with bold type in the same font as other language in the Collection Letter, before the signature block, which reads as follows:

> **Fair Debt Collections Practices Notice: This is an attempt to collect a debt, and any information obtained will be used for that purpose.  Unless you notify this office within 30 days thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days after receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

[*Id.* at p. 2.]  Plaintiff alleges that the Collection Letter violates 15 U.S.C. § 1692(g)(a)(3) by omitting the words from (g)(a)(3) "after receipt of the notice" and the words "disputes

the validity of the debt, or any portion thereof" within the second line of the validation notice. [Doc. 4 at ¶¶ 18; 37.] Plaintiff also alleges that the Collection Letter violates 15 U.S.C. § 1692(g)(a)(4) by failing to contain the exact language in (g)(a)(4) "that the debt, or any portion thereof, is disputed," in the third sentence of the validation notice. [*Id.* at ¶¶ 19; 38.] Plaintiff makes various *conclusory* claims in the Amended Complaint that the validation notice is a "distorted version of the disclosures" [*id.* at ¶ 39], and "does not adequately inform the consumer of the rights he or she enjoys or the "nuances involved in exercising such rights." [*id.* at ¶ 36.] Plaintiff deduces in a *conclusory* fashion, that the Collection Letter "violates the FDCPA by failing to sufficiently inform the least sophisticated consumer of the rights and/or protections he or she enjoys under § 1692g(a)(3) and g(a)(4), as the information/disclosure proffered in the Collection Letter is devoid of entire swaths of mandatory information." [*Id.* at ¶ 40.] However, the Amended Complaint offers no insight into the specific rights or protections to which it refers or how omitting the specific language above would affect a least sophisticated consumer reading it. [*Id., generally.*]

Plaintiff also attempts to assert class action allegations in the Amended Complaint under the supposition that "Defendant has dispatched thousands of unlawful collection letters to consumers in an attempt to collect a debt, and in each such letter," Defendant failed to include the "mandatory disclosures and/or information in violation of § 1692g(a)(3) and § 1692g(a)(4)," without specifying how Defendant purportedly failed to

provide mandatory disclosures or attaching a single collection letter apart from the one directed to Plaintiff attached as Exhibit "A" to the Amended Complaint.[1]   [*Id.* at ¶ 3.]

In addition, the Amended Complaint incorrectly concludes that "[v]enue in this District is proper because Plaintiff resides here, Defendant transacts business here, and the complained of conduct occurred within the venue."[2]   [*Id.* at ¶ 7]   Curiously, this generalized conclusion contradicts other more specific allegations in the Amended Complaint which allege that Plaintiff "is a natural person, and a citizen of the State of Florida, residing in Marion County, Florida," [*Id.* at ¶ 8.], and "Defendant is a Florida corporation, with its principal place of business located in Ocala Florida." [*Id.* at ¶ 10.] The Collection Letter also establishes that the complained of conduct did not occur in the Tampa Division as it was transmitted by Defendant to Plaintiff in Marion County, Florida, and seeks payment there as well.  [Doc. 4-1 at pp.1-2.]  There are no allegations in the Amended Complaint alleging that any party to or action in this case is tied to a county within the Tampa Division's purview.   [*See* Doc. 4, *generally*; *see also* Doc. 4-1, *generally*.]

[*Intentionally left blank*]

---

[1]   Notably, this particular allegation was not incorporated into the actual claim.  [*See* Doc. 4 at ¶ 33.]
[2]   This allegation and the other jurisdictional and venue requirements in Paragraphs 5 through 12, such as allegations of Plaintiff being a consumer and Defendant being a debt collector, are also not subsumed within the claim by incorporation and should be dismissed on this basis alone.  [*See* Doc. 4 at ¶ 33.]  Defendant nonetheless proceeds with arguments for dismissal in an abundance of caution.

4

## II.     RELIEF REQUESTED.

The Amended Complaint should be dismissed for improper venue and failure to state a claim upon which relief can be granted.  Plaintiff improperly filed the Amended Complaint in the Middle District of Florida's Tampa Division instead of the Ocala Division where all of the parties reside or conduct business, and all of the purported acts at issue took place in Marion County, Florida.  Plaintiff also has not and cannot prove any set of facts in support of his conclusory claims that a FDCPA violation occurred to entitle him to relief.  Given these fatal defects, the Amended Complaint should be dismissed with prejudice against Defendant, or in the very least, transferred to the Middle District's Ocala Division.

## III.    ARGUMENT.

Dismissal of the Amended Complaint is warranted in this action where Plaintiff has filed in an improper venue and failed to sufficiently allege a violation of the FDCPA. Defendant is permitted to file a motion to dismiss on the basis of improper venue and failure to state a claim upon which relief can be granted.  *See* Fed.R.Civ.P. 12(b)(3) and (6).  Dismissal may be sought under Rules 12(b)(3) and 12(b)(6) in the same motion, however, each basis for dismissal has distinct legal standards and arguments, and are thus addressed separately in Sections III(A) and (B) below.

> **A.     *The Amended Complaint Should be Dismissed Because Venue in the Tampa Division is Improper.***
>
> > **i.     *Legal Standards Under 12(b)(3).***

28 U.S.C.S. § 1404(b) provides that if a case is improperly filed in the wrong division or district, the district court in which the case is improperly filed "shall dismiss, or

5

if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."   The decision to transfer or dismiss is within the Court's sole discretion.  *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 985 (11th Cir. 1982);  *Brownsberger v. Nextera Energy, Inc.,* 436 F. App'x 953, at *1 (11th Cir. Aug. 5, 2011).

In evaluating a motion to dismiss for improper venue without a hearing, the Court determines whether Plaintiff has made "only a prima facie showing of venue."  *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (abrogated on other grounds).   "[T]he plaintiff bears the burden of showing that the venue selected is proper." *Hemispherx Biopharma, Inc. v. Mid-South Capital, Inc.*, 669 F. Supp. 2d 1353, 1356 (S.D. Fla. 2009). The Court may consider evidence outside of the pleadings and may make findings of fact necessary to resolve a motion to dismiss for improper venue.  *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).   All facts alleged in the complaint are accepted as true, so long as they are not controverted by the defendant's evidence.   *Delong Equip. Co.*, 840 F.2d 843 at 845. (abrogated on other grounds). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Finally, in analyzing the propriety of venue under 28 U.S.C. § 1391(b)(2), the Eleventh Circuit has stated that "only the events that directly give rise to a claim are relevant" and that "of the places where the events  have taken place, only those locations

6

hosting a 'substantial part' of the events are to be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). "[T]he proper focus of the venue inquiry is on the relevant activities of the Defendants." *Hemispherx Biopharma, Inc.*, 669 F. Supp 2d at 1357.. In assessing whether a "substantial part of the events or omissions giving rise to the claim occurred" in a particular district, courts should consider "only those acts and omissions that have a close nexus to the wrong." *Jenkins Brick Co.,* 321 F.3d 1366 at 1372.

In applying the Rule 12(b)(3) standard to the instant matter, venue is improper in the Middle District of Florida's Tampa Division and the action should be dismissed. Alternatively the Court should transfer venue from the Middle District of Florida's Tampa Division to the Ocala Division.

### ii.        _Venue of the Instant Matter is Improper._

The Amended Complaint must be dismissed on the basis of improper venue.  28 U.S.C.S. § 1391 governs venue of civil actions and provides in pertinent part that a civil action may only be brought under three (3) circumstances:

> (1)    *A judicial district in which any defendant resides*, if all defendants are residents of the State in which the district is located;

> (2)    *A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred*, or a substantial part of property that is the subject of the action is situated; or

> (3)    If there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to

the court's personal jurisdiction with respect to such
action.

(*Emphasis added*).   The Tampa Division is not applicable to any of the above-referenced

categories.   Indeed, the Amended Complaint is devoid of any well-pleaded allegations

tying Defendant's conduct to any county within the Tampa Division.   [*See* Doc. 4,

*generally*.]   To the contrary, allegations in the Amended Complaint coupled with

Defendant's Affidavit attached hereto as Exhibit "1" would fulfill the first and second

categories of 28 U.S.C.S. § 1391for the Ocala Division.

Both the Amended Complaint and Exhibit "1" suggest that any alleged violate

conduct occurred in or around Marion County, Florida, where Defendant's principal place

of business is, where Defendant transacts business, and where Plaintiff and Defendant

reside.   [*See* Ex. 1 at ¶ 2; Doc. 4 at ¶¶ 7-8; 10;] 28 U.S.C.S § 1391(c)(2) ("an entity … shall

be deemed to reside, if a defendant, in any judicial district in which such defendant is

subject to the court's personal jurisdiction with respect to the civil action in question").

The Collection Letter was transmitted by Defendant to Plaintiff in Marion County, Florida.

[*See* Doc. 4-1 at p. 1.]   Indeed, the Collection Letter is seeking payment arising from

delinquent assessments of Plaintiff's home in Marion County, Florida, to the Association

located in Marion County, Florida.   [*See* Doc. 4-1, *generally*.]   As the Collection Letter is

the event directly giving rise to Plaintiff's claim that Defendant violated the FDCPA, there

can be no doubt that the location hosting a "substantial" part of the events underlying the

action is plainly in Marion County, Florida, and that the Tampa Division is an improper

venue.   [*See* Ex. 1, *generally*; Doc. 4 at ¶ 8; Doc. 4-1 at p. 1.]

8

To the extent Plaintiff's allegation in Paragraph 7 of the Amended Complaint that venue in the Tampa Division is proper because "Plaintiff resides here, Defendant transacts business here, and the complained of conduct occurred within the venue," [Doc. 4 at ¶ 7], contradicts more specific allegations in the Amended Complaint relating to same, Paragraph 7 is no more than a conclusion and the Court should consequently disregard it. *See  Iqbal*, 556 U.S. 662 at 679 (holding that pleadings that are no more than conclusions are not entitled to the assumption of truth in a motion to dismiss).  Moreover, Defendant's sworn affidavit directly controverts the allegation in Paragraph 7.  [*See* Ex. 1, *generally*.] Defendant also importantly affirmed in its affidavit that it conducts no business in the Tampa Division with respect to collecting payments relating to the Association, and that none of the activities and events alleged in the Amended Complaint took place in a county under the Tampa Division.  [*See* Ex. 1 at ¶¶ 6-7.]

Given the lack of allegations in the Amended Complaint connecting Defendant to the Tampa Division as well as Defendant's sworn statement in Exhibit "1," Plaintiff has not met his burden of showing that venue is proper in the Tampa Division.  Courts in the Middle District have consistently dismissed actions for improper venue under similar circumstances, and this Court should do the same.  *See e.g., Riley v. Donatelli,* 2017 U.S. Dist. LEXIS 122632 (M.D. Fla. Aug. 3, 2017) (dismissing action based on improper venue); *Silver v. Karp,* 2014 U.S. Dist. LEXIS 119462 (S.D. Fla. Aug. 27, 2014) (same); *Brownsberger v. Gexa Energy, LP,* 2011 U.S. Dist. LEXIS 5214 (S.D. Fla. Jan. 19, 2011) (same)*; but see Adstep, Inc. v. Freeman Decorating Co.,* 2003 U.S. Dist. LEXIS 25728 (M.D. Fla. Sept. 16, 2003) (finding improper venue but transferring action in the interest of

justice where discovery had commenced).   Accordingly, the Court should dismiss the Amended Complaint in its entirety where discovery has yet to commence.   Alternatively, if the Court deems it in the interest of justice, the Court should transfer the action to the Ocala Division.

      **B.**      ***The Amended Complaint Should be Dismissed for Failure to State a Claim.***

          **i.**      <u>***Legal Standard Under 12(b)(6).***</u>

A "motion to dismiss under Rule 12(b)(6) of the *Federal Rules of Civil Procedure* tests the sufficiency of a complaint and requests that the court determine whether the complaint sets forth sufficient allegations to establish a claim for relief."   *Gainer v. City of Winter Haven,* 134 F. Supp. 2d 1295, 1304 (M.D. Fla. Nov. 8, 2000).   "[A] district court should not dismiss a complaint for failure to state a claim solely on the pleadings, 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"   *Id.*

To survive dismissal, the plaintiff must meet some minimal pleading requirements. *Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1262 (11th Cir. 2004).   "The allegations 'must possess enough heft' to set forth a 'plausible entitlement to relief.'"   *Fin. Sec. Assur.,* 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1966-67 L. Ed. 2d 929 (2007)).   Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Bank of Am., N.A. v. Zasky*, 2016 U.S. Dist. LEXIS 65515, *4 (M.D. Fla. May 18, 2016) (quoting *Twombly*, 550 U.S. at 555).   In this

regard, a plaintiff must do more than merely "label" his claims. *Twombly,* 550 U.S. 544 at 555. "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal for [for failure to state a claim]." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *See Iqbal*, 556 U.S. 662 at 664.

With this legal backdrop, Plaintiff's claim for violation of 15 U.S.C. §§ 1692(g)(a)(3) and (g)(a)(4) fails to state a claim for the reasons more fully set forth below.

### ii.     *The Amended Complaint Fails to State A Claim Upon Which Relief May Be Granted.*

The Amended Complaint should be dismissed with prejudice, as Plaintiff has not and cannot allege sufficient facts to establish a cause of action for violation of the FDCPA. To state a cause of action under the FDCPA, Plaintiff is required to allege that: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the statute; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See Helman v. Bank of Am.,* 685 Fed. Appx. 723, 725-26 (11th Cir. 2017). Plaintiff has not and cannot sufficiently pled the third element.

The gravamen of Plaintiff's claim is that Defendant did not track word-for-word the language of 15 U.S.C. §§ 1692(g)(a)(3) and (g)(a)(4) in the validation notice of the Collection Letter. However, federal courts, including two (2) courts in the Middle District,

have squarely held that precisely tracking the language under the FDCPA in a validation notice is not required. *See Narvaez v. Specialized Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 51552, *7 (M.D. Fla. April 20, 2015) ("[T]here is no requirement in the FDCPA that a debt collector quote the statute's language verbatim."); *Martin v. Butler & Hosch, P.A.,* 2014 U.S. Dist. LEXIS 97965, *7 (M.D. Fla. July 18, 2014) (same); *Wallace v. Diversified Consultants, Inc.*, 745 F.3d 1235, 1235 (6th Cir. 2014) ("collector need not parrot the [FDCPA] to comply with it. A statement works if it speaks with enough clarity to convey the required information to a reasonable but unsophisticated consumer."); *Emanuel v. American Credit Exchange,* 870 F.2d 805, 808 (2nd Cir. 1989) ("[T]here is simply no requirement that the [collection] letter quote verbatim the language of the [FDCPA]"). Put another away, a debt collector that does not parrot the language of 15 U.S.C. §1692(g) in all respects does not automatically violate the FDCPA as Plaintiff contends in a conclusory manner. *See Id.*

Instead, when a variance is present and a question of the sufficiency of the validation notice is raised, the Eleventh Circuit has adopted a "least sophisticated consumer" standard to analyze those claims under the FDCPA. *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168 (11th Cir. 1985). Here, a violation of the FDCPA would only be found "if the variance is one that would tend to *mislead* the least sophisticated consumer." *Caceres v. McCalla Raymer, LLC,* 755 F.3d 1299, 1303 (11th Cir. 2014) (citing *Jeter,* supra) (*Emphasis added*). In *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1194 (11th Cir. 2010), the Eleventh Circuit defined the "least sophisticated consumer" as follows:

> The 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care. However, the test has an objective component in that while protecting naïve consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.

"The Court 'must examine each communication as a whole, and not by looking to each sentence individually' because 'even the least sophisticated debtor is bound to read collection notices in their entirety.'" *Anselmi v. Shendell & Associates, P.A.*, 2014 U.S. Dist. LEXIS 153657, *5 (S.D. Fla. Oct. 28, 2014) (citing *DeCapri v. Law Offices of Shaprio Brown & Alt, LLP*, U.S. Dist. LEXIS 131979 at *4 and *Martinez v. Law Offices of David J. Stern, P.A. (In re Martinez)*, 266 B.R. 523, 532 (Bankr. SD. Fla. 2001) aff'd, 311 F.3d 1272 (11th Cir. 2002) ("[A]lthough the applicable standard is that of a consumer with a minimum level of sophistication, it assumes that a [collection letter] is read in its entirety, carefully and with some elementary level of understanding."); *see also Martin*, 2014 U.S. Dist. LEXIS 97965 at *8 ("When reviewing a debt validation notice, [the court] must review the document as a whole in order to evaluate whether the notice would inform sufficiently a least sophisticated debtor of his debt validation rights.")

In reading the Collection Letter at issue as a whole, there is no question that the validation notice speaks with enough clarity to convey all information required under the FDCPA to a reasonable, but unsophisticated consumer. The Collection Letter identifies Defendant as a firm representing a creditor, the Association. [Doc. 4-1 at p. 1.] It states the specific amount of the debt and what the debt is relating to. [*Id.*] It also includes a validation notice near the end of the letter in the same size font, partially underlined in bold

type before any signature block, so as to emphasize its importance. [*Id.* at p. 2.] The validation notice includes a statement that the consumer within 30 days contact Defendant or else Defendant will assume the debt is valid. [*See Id.*] It states that if the consumer notifies Defendant in writing within 30 days from receipt of the letter, Defendant will obtain verification of the debt or obtain a copy of a judgment and mail the consumer a copy of such judgment or verification. [*See Id.*] It also states that if the consumer requests Defendant in writing within 30 days after receiving the notice, Defendant will provide the consumer with the name and address of the original creditor, if different form the current creditor. [*See Id.*] The validation notice, when read together with the Collection Letter, sufficiently conveys what is required under 15 U.S.C. §§ 1692(g)(a)(3) through (g)(a)(4) and leaves no questions as to its meaning.

Further, the omission of the phrases "disputes the validity of the debt, or any portion thereof" or "the debt or any portion thereof, is disputed," does not mislead a least sophisticated consumer as to the FDCPA, as the exclusion of these particular words actually requires less action by Plaintiff to assert his rights under the FDCPA. For example, a mere communication with Defendant in any form would effectively bar Defendant from assuming the debt to be valid without the need for Plaintiff to specifically state that they dispute or contest the debt. [*See* Doc. 4-1 at p. 2.] In addition, any communication in written form without specific language that the debt is disputed would lead to Defendant obtaining and sending verification of the debt to the consumer. [*See Id.*] Likewise, interchanging the words "thereof" with "after receipt of the notice," is of no moment when the validation notice read in its entirety reiterates at least twice that Plaintiff

14

must take action within 30 days "after receiving this notice." [*See Id.*]  The overarching point is that statutory syntax is not required and nothing about the validation notice at issue is misleading or deceptive.  Even the least sophisticated consumer would read the validation notice in the Collection Letter to mean that he/she has a right to dispute the debt by contacting Defendant.  Accordingly, a reasonable unsophisticated consumer when reading the Collection Letter's validation notice in its entirety with care, would be informed of his/her payment obligations and would understand that he/she had 30 days from receipt of the letter to make some sort of communication to Defendant, which is the precise message the FDCPA requires a debt collector to promulgate.

Critically, Plaintiff does not contend in the Amended Complaint that validation notice is misleading or deceptive.  [*See* Doc. 4, *generally.*]  Instead, Plaintiff misconstrues the least sophisticated consumer standard to mean that a debt collector violates the FDCPA if the debt collector does not precisely track the statutory language verbatim in a validation notice.   The Amended Complaint is rife with statutory recitations and conclusory accusations that the validation notice "does not adequately inform the consumer of … rights," [Doc. 4 at ¶  36], "falls utterly short of …information," [*Id.* at ¶ 37], is "defective," [*Id.* at ¶ 38], "does not effectively convey information," [*Id.* at ¶ 39] or is a "distorted version" of the statutory language.  [*Id.*]  However, finding that Defendant violated the FDCPA under Plaintiff's syntactic theory would lead to a bizarre and idiosyncratic interpretation of the FDCPA where Plaintiff fails to allege how the specific words that were omitted from the validation notice could possibly mislead a least sophisticated consumer in any way as to his/her rights under the FDCPA.  *See LeBlanc,* 601 F.3d 1185 at 1194.  It is

15

telling that the Amended Complaint is completely devoid of any allegations that Plaintiff was misled, let alone that a least sophisticated consumer would be mislead by the validation notice.  [*See* Doc. 4, *generally*.]  This fatal omission is likely because Plaintiff cannot make such an assertion.

Even Plaintiff's final allegation that the "Collection Letter violates the FDCPA by failing to sufficiently inform the least sophisticated consumer of the rights and/or protections he or she enjoys under 15 U.S.C. §§ 1692g(a)(3) and g(a)(4)," fails to include language that the least sophisticated consumer would be mislead or deceived in some way. Even assuming *arguendo* it could be read to contain such language, this allegation is not entitled to an assumption of truth as it is nothing but a legal conclusion masquerading as a fact.  *Davila*, 326 F.3d 1183 at 1185.  To put it plainly, when Plaintiff's recitation of the statutory language and conclusory allegations are stripped away, what remains of the Amended Complaint is a completely barren pleading shell lacking any sufficient facts that would rise to the level of a plausible violation under the FDCPA.  Accordingly, the Court should dismiss the Amended Complaint in its entirety with prejudice.

## IV.    CONCLUSION.

The Amended Complaint was improperly filed in the Middle District of Florida's Tampa Division, when it should have been filed in the Ocala Division where both Plaintiff and Defendant reside, and a substantial part of the events giving rise to the Amended Complaint took place.   In addition, Plaintiff's recitation of statutory language and conclusory allegations fail to sufficiently establish the third element of a violation of the FDCPA, that a least sophisticated consumer would be mislead by the Collection Letter.  It

is beyond doubt that Plaintiff can prove no set of facts in support of his claim or entitling him or others in a putative class to relief.  *See Gainer,* 134 F. Supp. 2d 1295 at 1304. Given these fatal defects, the Court should dismiss the Amended Complaint with prejudice, or alternatively, transfer venue to the Middle District of Florida's Ocala Division.

WHEREFORE Defendant, KLEIN & KLEIN, LLC, respectfully requests the Court to enter an Order dismissing the Amended Complaint, or alternatively, transferring the venue from the Middle District of Florida's Tampa Division to the Ocala Division.

DATED this 3rd day of December, 2018.

### 3.01 CERTIFICATION

I hereby certify that on December 3, 2018, counsel for Defendant, Klein & Klein, LLC, Chuck J. Meltz, Esquire, and Kirsten D. Blum, Esquire, conferred in good faith with counsel for Plaintiff, Grant Feiss, Jibrael S. Hindi, Esquire, regarding transferring venue to the Middle District of Florida's Ocala Division, and Jibrael S. Hindi, Esquire does not object to transferring venue to that location.

*/s/ Kirsten D. Blum*
KIRSTEN D. BLUM, ESQUIRE

17

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 3rd day of December, 2018, a true and correct copy of the above and foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the following:  **Jibrael S. Hindi, Esquire** at jibrael@jibraellaw.com.

*/s/ Kirsten D. Blum*
CHARLES J. MELTZ, ESQUIRE
Florida Bar No. 985491
KIRSTEN D. BLUM, ESQUIRE
Florida Bar No.  085736
GROWER, KETCHAM, EIDE, TELAN
 & MELTZ, P.A.
PO Box 538065
Orlando, FL  32853-8065
Phone: (407) 423-9545
Fax:    (407) 425-7104
cjmeltz@growerketcham.com
kdblum@growerketcham.com
enotice@growerketcham.com
jclinton@growerketcham.com
*Counsel for Defendant, KLEIN & KLEIN, LLC*

13519/14

18